[Cite as *Bennett v. Bennett*, 2019-Ohio-4363.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JULIA BENNETT | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28380 |
| | : | |
| v. | : | Trial Court Case No. 2017-DR-456 |
| | : | |
| BRIAN BENNETT | : | (Appeal from Common Pleas Court - |
| | : | Domestic Relations Division) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of October, 2019.

. . . . . . . . . . .

MARY ANN THINNES, Atty. Reg. No. 0012653, 241 West Riverview Avenue, Dayton, Ohio 45405
    Attorney for Plaintiff-Appellant

ERIC M. BROWN, Atty. Reg. No. 0082160, 250 Civic Center Drive, Suite 220, Columbus, Ohio 43215
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

HALL, J.

**{¶ 1}** Julia Bennett appeals from the trial court's April 3, 2019 judgment entry and decree of divorce that, inter alia, terminated her marriage to appellee Brian Bennett, designated Brian the residential parent and legal custodian of the parties' children, imposed a child-support obligation on Julia, and divided the parties' assets and liabilities.[1]

**{¶ 2}** In three related assignments of error, Julia contends the trial court committed plain error, abused its discretion, and ruled against the weight of the evidence by approving parts of the parties' own agreement that are "untrue, exaggeration, hyperbole, not consistent with the facts of the case, internally inconsistent, not equitable and/or contrary to public policy."

**{¶ 3}** The record reflects that the parties married in December 2011. Julia filed her complaint for divorce in May 2017. The case proceeded to a January 11, 2019 hearing before the trial court. At the outset of the hearing, the trial court noted that Brian was present with counsel. The trial court noted that Julia was not present but that her attorney was present and was acting on her behalf. Julia's attorney, Mary Ann Thinnes, confirmed that fact. (Tr. at 3.) The trial court also expressed its understanding that the parties had reached an agreement resolving all issues except for disposition of the marital residence. (*Id.* at 3-4.) Both attorneys agreed. (*Id.* at 3.) Thinnes identified the agreement as Joint Exhibit 1. She informed the trial court that it included some handwritten changes to which the parties had agreed. (*Id.* at 4.) Thinnes also told the trial court that the agreement could be submitted as an exhibit and did not need to be read into the record. (*Id.* at 3-4.) The trial court proceeded to take testimony from Brian regarding his consent to the agreement. (*Id.* at 5-6.) Thinnes also represented to the court that Julia was "in agreement with all the

---

[1] For purposes of clarity, we will refer to the parties by their first names.

terms" of Joint Exhibit 1. (*Id.* at 7.) Brian and his father then testified about the marital home, which was owned by a foundation that assists veterans. (*Id.* at 8.)

{¶ 4} Following the hearing, the trial court filed a February 11, 2019 decision in which it found that the real estate was not marital property because the parties had no ownership interest in it. (Doc. # 115 at 3.) In that same decision, the trial court found the parties entitled to a divorce on the grounds of incompatibility. (*Id.* at 2.) It also stated:

> This matter was before the court for a final contested divorce hearing on January 11, 2019. Present were plaintiff, Julia Bennett, hereafter referred to as Julia, represented by Attorney Mary Ann Thinnes and defendant, Brian Bennett, hereinafter referred to as Brian, represented by Attorney Eric M. Brown.
>
> * * *
>
> The parties read an agreement into the record prior to the commencement of the hearing. The court orders that the terms of this agreement be incorporated into a Final Judgment and Decree of Divorce consistent with the rulings herein.

(*Id.* at 1-2.)

{¶ 5} At the conclusion of its decision, the trial court provided the following instructions:

> Counsel for plaintiff, Mary Ann Thinnes, shall prepare a Final Judgment and Decree of Divorce consistent with the matters agreed by the parties and this Decision so that decree may be filed no later than 21 days from the filing of this Decision.

If needed, Attorney Mary Ann Thinnes shall contact Jean Walther, Judicial Assistant * * * for instructions on how to obtain a CD-ROM of the agreement read into the record prior to the commencement of the hearing so that those terms may be incorporated into the Final Judgment and Decree of Divorce consistent with the rulings herein.

(*Id.* at 4.)

{¶ 6} The next docket entry by the trial court is a March 8, 2019 notice of potential dismissal of the case based on Thinnes' failure to file a proposed final judgment and decree of divorce. (Doc. # 118.) Thereafter, on March 26, 2019, Thinnes requested a telephone conference "to address certain misunderstandings re certain inaccurate and we believe unnecessary language included in 'agreement' submitted at the final hearing on January 11, 2019." In her request, Thinnes advised that "[t]his is not an attempt to change the substantive agreements discussed and reached prior to the final hearing." (Doc. # 120.) The trial court promptly granted the request for a telephone conference and scheduled it for the following day. (Doc. # 121.) The record contains no account or recording of what occurred during the telephone conference. The next docket entry is an April 1, 2019 "Notice of Plaintiff's Partial Withdrawal of Consent to Joint Exhibit 1." (Doc. # 122.) This filing consists solely of the following sworn statement by Thinnes:

Now comes Plaintiff, by and through counsel, and respectfully withdraws Plaintiff's consent to those parts of Joint Exhibit 1 which are on its face untrue, exaggeration, hyperbole, not consistent with the facts of this case, internally inconsistent, not equitable, contrary to public policy, and which distort the substantive agreements discussed and reached during

negotiations on January 11, 2019. The undersigned attorney for Plaintiff reasonably believed under the circumstances, perhaps mistakenly, but in good faith, that opposing counsel would not intend such distortions to be incorporated into a final decree herein.

(*Id.*)

{¶ 7} The next docket entry is the trial court's April 3, 2019 judgment entry and decree of divorce from which Julia has appealed. (Doc. # 123.) That filing began with the following introductory language:

This cause came on before the Court on the 11th day of January, 2019, Plaintiff and Defendant both appearing. Plaintiff, Julia F. Bennett, was not present but appeared through her attorney, Mary Ann Thinnes, and Defendant, Brian Bennett, appeared with his attorney, Eric M. Brown. Attorney Thinnes requested a continuance so that her client could be present, but the Court denied the request under the circumstances herein. * * * The case proceeded to a contested hearing on the issue of real estate only. Otherwise, the parties reached an agreement regarding all other matters and said agreement was read into the record. * * *

Attorney Thinnes represented that she had Plaintiff's limited authority to agree or acquiesce to most issues before the Court, and pursuant to such limited authority the final hearing proceeded on Defendant's counterclaim.

(*Id.* at 1-2.)

{¶ 8} In the remainder of its judgment entry and decree of divorce, the trial court granted the parties a divorce on the grounds of incompatibility. It resolved other issues

between them consistent with the language of Joint Exhibit 1. In fact, the bulk of the language of Joint Exhibit 1 was incorporated verbatim into the final judgment and decree of divorce.

**{¶ 9}** In her three assignments of error, which she briefs together, Julia contends the trial court committed plain error, abused its discretion, and ruled against the weight of the evidence by approving and adopting parts of Joint Exhibit 1 that are "untrue, exaggeration, hyperbole, not consistent with the facts of the case, internally inconsistent, not equitable and/or contrary to public policy."

**{¶ 10}** Julia begins her brief with assertions about her inability to assist her attorney in preparing for the January 11, 2019 hearing. She also suggests that her attorney lacked the ability to prepare adequately for the hearing. Julia further asserts that opposing counsel first presented her attorney with a proposed settlement agreement on the morning of the hearing and that her attorney lacked time to review it thoroughly or to consult her. Julia claims that her attorney proceeded into the courtroom and accepted Joint Exhibit 1 despite the fact "that it still contained considerable language that did not reflect the actual circumstances—including that both parties appeared, and that both parties had testified, and that the agreement was read into the record, signed by the parties, and substantial hyperbole claiming that Julia had reviewed and understood and waived many things which were unnecessary to the decree, and simply not true." (Appellant's brief at 3.)

**{¶ 11}** Julia further asserts that her attorney spent several weeks attempting to prepare a proposed final judgment and decree of divorce in accordance with the trial court's February 11, 2019 instructions. She references undocumented, off-the-record

exchanges of draft decrees with opposing counsel and contends that opposing counsel insisted on retaining "boilerplate" language from Joint Exhibit 1. (*Id.* at 4.) She also argues that opposing counsel insisted on changing Joint Exhibit 1 when preparing the proposed final judgment and decree of divorce.[2] Specifically, Julia notes that Joint Exhibit 1 stated: "The Defendant, Brian R. Bennett, appeared with a corroborating witness and his attorney, Eric M. Brown. Plaintiff, Julia F. Bennett, did not appear, but her counsel, Mary Ann Thinnes was present." Julia contends Brian's attorney changed the proposed final judgment and decree of divorce to read: "This cause came before the Court on the 11th day of January 2019, Plaintiff and Defendant *both appearing.*" (Emphasis added.) Julia contends this change made it seem as if she was present for the hearing.

{¶ 12} Julia also claims Joint Exhibit 1 inaccurately contained language stating: "Upon consideration thereof, and upon the sworn testimony of the parties, this Court FINDS * * *." Julia notes that this language was included in the trial court's final judgment and decree of divorce even though she did not appear for the hearing and presented no sworn testimony. Julia also asserts that Joint Exhibit 1 misstated the birthday of one of the parties' children by two days. She claims this was not corrected in the final judgment and decree of divorce.

{¶ 13} Julia next contends Joint Exhibit 1 makes repeated references to the parties making full disclosures, being advised of certain things, waiving things, and agreeing to or acknowledging things. Julia reasons that none of these assertions, which were included in the final judgment and decree of divorce, can be true because she was not

---

[2] Although not part of the record, it appears from the allegations in the parties' briefs that counsel for Brian ultimately drafted the final judgment entry and decree of divorce that the trial court filed.

present for the January 11, 2019 hearing.

{¶ 14} Finally, Julia contends the wrong child-support computation worksheet was attached to Joint Exhibit 1 and that the parties had agreed to the use of a different one. She acknowledges, however, that the trial court actually used the correct worksheet in its final judgment and decree of divorce. She apparently complains only that the wrong worksheet remains part of the record.[3]

{¶ 15} Having reviewed each of Julia's arguments in light of Joint Exhibit 1 and the trial court's April 3, 2019 judgment entry and decree of divorce, we find her assignments of error to be without merit. With regard to Julia's assertions that her attorney lacked time to prepare for the hearing or to consult with her and that opposing counsel foisted Joint Exhibit 1 on attorney Thinnes on the morning of the hearing, the record contains no evidence to support these claims. What the record does reflect is that Thinnes appeared for the hearing and acted on Julia's behalf with Julia's consent and proceeded to tell the trial court that Julia was "in agreement with all the terms" of Joint Exhibit 1. (Tr. at 7.)

{¶ 16} Although Julia suggests that Joint Exhibit 1 contains things that are "untrue, exaggeration, hyperbole, not consistent with the facts of the case, internally inconsistent, not equitable and/or contrary to public policy," she admits that she "authorized [her attorney] to represent her at the final hearing" and that her attorney "agreed to the submission of the draft decree as Joint Exhibit 1." (Appellant's brief at 2-3.) By the time

---

[3] According to Julia, the various "irregularities" about which she complains on appeal were addressed with Brian's counsel in several e-mail exchanges that are not part of the record. Julia's counsel then requested and obtained the telephone conference referenced above. Julia asserts that during the telephone conference the trial court requested separate proposed final decrees from both attorneys, but no such discussion or request is in the record. In any event, on April 3, 2019 the trial court filed the final judgment and decree of divorce from which Julia has appealed.

Julia filed her belated April 1, 2019 "Notice of Plaintiff's Partial Withdrawal of Consent to Joint Exhibit 1," the trial court already had filed its post-hearing February 11, 2019 decision accepting Joint Exhibit 1 as the agreement of the parties and ordering it incorporated into a final judgment and decree of divorce. (*See* Doc. # 115 at 2, 4.) Once the trial court made that order, we question whether Julia unilaterally could "withdraw" her consent to portions of Joint Exhibit 1.

{¶ 17} But even if Julia could withdraw her consent, her notice was ineffectual. The motion purported to withdraw consent to unspecified portions of Joint Exhibit 1 that were "untrue, exaggeration, hyperbole, not consistent with the facts of the case, internally inconsistent, not equitable and/or contrary to public policy." The motion did not identify anything in particular, leaving it to the trial court to ferret out which portions of the 20-page document Julia found objectionable. The trial court had no obligation to undertake such a task.

{¶ 18} In any event, based on our own review of Joint Exhibit 1, we see very little that is plainly erroneous and nothing that is facially inequitable or contrary to public policy. The only possibly erroneous or false information was (1) the statement that the parties had appeared before the trial court and presented "sworn testimony," (2) a reference to Joint Exhibit 1 having been read into the record, and (3) a misstated birthday for one of the parties' children. Although Brian testified, Julia did not appear personally. Her attorney appeared on her behalf and spoke for her. Strictly speaking, however, Julia presented no "sworn testimony." But the fact that Julia did not appear for the hearing, and therefore did not testify, was made clear in the first paragraph of the first page of Joint Exhibit 1. As for reading the parties' agreement into the record, it is unclear whether this occurred. At the

outset of the January 11, 2019 hearing, attorney Thinnes told the court that it was unnecessary to read the agreement into the record of that hearing. In its subsequent Feburary 11, 2019 decision, however, the trial court noted that the parties had read the agreement into the record *prior* to the hearing. But regardless of whether the agreement in fact was read into the record, Joint Exhibit 1 is part of the record, and there is no dispute about what it says. We fail to see how Julia could have been prejudiced by the trial court saying the agreement had been read into the record even if it was not. As for a child's birthday being misstated by two days, we fail to see how Julia was prejudiced. And contrary to her argument on appeal, the incorrect birthday was corrected in the April 3, 2019 final judgment and decree of divorce. (*See* Joint Exhibit 1 at 1 and Doc. # 123 at 2.)

{¶ 19} As for Julia's other complaints, we see nothing objectionable about the trial court's April 3, 2019 final judgment and decree of divorce stating: "This cause came before the Court on the 11th day of January 2019, Plaintiff and Defendant both appearing." Although Julia contends this language implied that she was present for the hearing, once again the record makes clear that she was not present and that her counsel appeared on her behalf. Indeed, the *next sentence* states: "Plaintiff, Julia F. Bennett, was not present but appeared through her attorney * * *." (Doc. # 123 at 1.)

{¶ 20} We also find no merit in Julia's argument that Joint Exhibit 1 makes repeated references to the parties making full disclosures, being advised of or waiving certain things, and agreeing to or acknowledging other things. She maintains that these assertions, which were included verbatim in the final judgment and decree of divorce, cannot be true because she did not attend the January 11, 2019 hearing. But Joint Exhibit 1 does not say that the parties made disclosures, were advised, agreed, acknowledged,

or waived anything *in person at the hearing.* At the outset of the hearing, attorney Thinnes presented the trial court with a copy of Joint Exhibit 1 and confirmed that it represented the parties' agreement on all issues except the real estate. (Tr. at 3-4.) Minutes later, Thinnes assured the trial court that Julia was "in agreement with all the terms" of Joint Exhibit 1. (*Id.* at 7.) Because Joint Exhibit 1 explicitly stated that Julia was not present for the hearing, and because Thinnes presented it to the trial court at the outset of the hearing, we reasonably can infer that Julia agreed to everything in Joint Exhibit 1 while reviewing the case with her attorney sometime *before* the hearing and/or Thinnes approved it on Julia's behalf and with Julia's permission.

{¶ 21} We are equally unpersuaded by Julia's argument about the "wrong" child-support computation worksheet being attached to Joint Exhibit 1. As a threshold matter, there is *no* child-support worksheet attached to or accompanying the copy of Joint Exhibit 1 that is in the record. (*See* Tr. at Joint Exhibit 1.) Regardless, Julia acknowledges that the trial court actually used the correct worksheet in its final judgment and decree of divorce. She also makes no substantive argument about the trial court's child-support order being incorrect or otherwise objectionable. In fact, throughout her appellate brief, Julia makes no substantive argument challenging any aspect of the final judgment and decree of divorce with respect to its actual division of marital assets and liabilities, its allocation of parental rights and responsibilities, child support, or anything else. Therefore, even if we set aside the fact that Julia explicitly agreed to everything in Joint Exhibit 1 through her attorney, we fail to see how she was prejudiced by that document being incorporated into the trial court's April 3, 2019 final judgment and decree of divorce.

{¶ 22} For the foregoing reasons, we overrule Julia's assignments of error and

affirm the judgment of the Montgomery County Common Pleas Court, Domestic Relations Division.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies sent to:

Mary Ann Thinnes
Eric M. Brown
Brian Kruse
Hon. Timothy D. Wood